IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZWANENBERG FOOD GROUP (USA) INC., <br><br> Plaintiff, <br><br> v. <br><br> TYSON REFRIGERATED PROCESSED MEATS, INC., <br><br> Defendant. | C.A. No. 1:08-329 SLR <br><br> JURY TRIAL DEMANDED |

**DEFENDANT TYSON REFRIGERATED PROCESSED MEATS, INC.'s
ANSWER AND COUNTERCLAIM**

Defendant Tyson Refrigerated Processed Meats, Inc. ("Tyson"), by and through its undersigned counsel, files this Answer to Plaintiff Zwanenberg Food Group (USA) Inc. ("ZFG")'s Complaint and Counterclaim in the above-referenced action.

1. Tyson admits that ZFG has brought an action against Tyson for a declaratory judgment and for damages arising out of an alleged breach of contract and an alleged breach of the implied covenant of good faith and fair dealing. Tyson denies that it is liable to ZFG with respect to these or any other claims and denies that ZFG is entitled to any relief in this action.

2. Tyson is without knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

3. The allegations of this paragraph are admitted.

4. The allegations of this paragraph state legal conclusions to which no response is required. To the extent a response is required, Tyson admits that, under the terms of the parties' Asset Purchase Agreement ("APA"), any legal action or proceeding

1

arising out of or relating to the parties' transaction may be instituted in a federal or state court located in the City of Wilmington, Delaware. Tyson further admits that the parties have contractually agreed to submit to the jurisdiction of such courts in connection with any claim arising out of the APA.

5. The allegations of this paragraph state legal conclusions to which no response is required. To the extent a response is required, Tyson is without knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

6. The allegations of this paragraph state legal conclusions to which no response is required. To the extent a response is required, Tyson is without knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

7. Tyson admits that, in mid-2007, ZFG expressed interested in purchasing from Tyson the inventory and equipment that Tyson used to produce, manufacture, and sell canned luncheon meat to customers under certain private labels owned by those customers, as well as Tyson's registered trademarks "Bacon Grill" and "American Pride" ("the Assets"). The remaining allegations of this paragraph are denied.

8. The allegations of this paragraph are denied as stated. By way of further response, Tyson refers to the APA, which speaks for itself.

9. Tyson admits that the parties executed the APA on November 8, 2007. The remaining allegations of this paragraph are denied as stated. By way of further response, Tyson refers to the APA, which speaks for itself.

10. Tyson denies that ZFG has identified in its Complaint all portions of the APA relevant to this dispute.

11. Tyson admits that the quoted language is contained in Section 1.1 of the APA, but denies that this is the only pertinent language in such section. By way of further response, Tyson refers to the APA, which speaks for itself.

12. Tyson admits that the quoted language is contained in Section 1.2 of the APA, but denies that this is the only pertinent language in such section. By way of further response, Tyson refers to the APA, which speaks for itself.

13. Tyson admits that the quoted language is contained in Section 1.3 of the APA, and that Schedule 1.3 is annexed to the APA, but Tyson denies that the quoted language is the only pertinent language in such section and exhibit. By way of further response, Tyson refers to the APA, which speaks for itself.

14. Tyson admits that the quoted language is contained in Section 2.16 of the APA, and that Schedule 2.16 is annexed to the APA, but Tyson denies that the quoted language is the only pertinent language in such section and exhibit. By way of further response, Tyson refers to the APA, which speaks for itself.

15. Tyson admits that the quoted language is contained in Section 5.6 of the APA, but denies that this is the only pertinent language in such section. By way of further response, Tyson refers to the APA, which speaks for itself. The remainder of this paragraph is denied.

16. Tyson admits that Schedule 5.6 of the APA identifies the Transition Businesses referenced in the APA. The remainder of this paragraph is denied as stated. By way of further answer, Tyson refers to the APA, which speaks for itself.

17. Tyson is without knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

18. Tyson is without knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

19. The allegations of this paragraph are denied. By way of further answer, Tyson refers to the APA, which speaks for itself.

20. The allegations of this paragraph are denied. By way of further answer, Tyson admits that it did not agree to meet jointly with ZFG and the Transition Businesses prior to the closing of the APA.

21. Tyson admits that ZFG paid the Closing Payment of $2,543,560.08 required by the APA and requested that Tyson provide Transition Services under Section 5.6 of the APA. The remaining allegations of this paragraph, if any, are denied.

22. Tyson denies all allegations in the sub-heading preceding Paragraph 22. Tyson admits that, after the closing, ZFG asked Tyson to provide the Transition Services, which included services pertaining to Wal-Mart. Tyson is without knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 22.

23. Tyson admits that in mid November 2007, Tyson sought to arrange a meeting in late November 2007 between representatives of ZFG, Tyson's Wal-Mart salesperson, and a Wal-Mart buyer.

24. The allegations of this paragraph are admitted.

25. The allegations of this paragraph are denied.

26. Tyson admits that on December 11, 2007, Ms. Davis sent an email containing the quoted language, which speaks for itself. By way of further answer, Tyson is without sufficient knowledge or information to form a belief as to Wal-Mart's

state of mind during the alleged time period. The remaining allegations of this paragraph are denied.

27. The allegations of this paragraph are denied.

28. The allegations of this paragraph are denied.

29. The allegations of this paragraph are denied.

30. Tyson admits that it worked with ZFG to service Wal-Mart's existing orders. The remaining allegations of this paragraph are denied.

31. The allegations of this paragraph are admitted. By way of further answer, Tyson denies that February 26, 2008 was the first time that Tyson or ZFG were informed of Wal-Mart's decision to change suppliers.

32. The allegations of this paragraph are denied.

33. Tyson denies all allegations in the sub-heading preceding Paragraph 33. The allegations of paragraph 33 are denied.

34. Tyson admits that in late November 2007, ZFG visited Tyson's plant in Texas to assume control of the Inventory.

35. The allegations of this paragraph state a legal conclusion to which no response is required. To the extent a response is required, the allegations of this paragraph are denied.

36. The allegations of this paragraph are denied.

37. With respect to the heading preceding paragraph 37, Tyson admits that the parties dispute certain of their rights and obligations under the APA. With respect to the allegations of Paragraph 37, Tyson admits that on March 19, 2008, ZFG sent Tyson a letter seeking return of $549,019.65 of the Purchase Price for Tyson's alleged failure to

deliver certain items of inventory listed in Schedule 1.3 of the APA. Tyson further admits that this correspondence included a list of the inventory items disputed by ZFG. Tyson denies that ZFG's letter and/or the list attached thereto accurately reflects the condition or status of the inventory at issue, and Tyson will require strict proof of all aspects of ZFG's inventory claim. The remaining allegations of this paragraph are denied.

38. The allegations of this paragraph are denied as stated. Tyson admits that on May 8, 2008, it responded in good faith to ZFG's March 19, 2008 correspondence by sending an email message with questions about some of the inventory items ZFG disputed. The remaining allegations of this paragraph are denied.

39. Tyson admits that it wrote to ZFG on May 12, 2008 and May 22, 2008 regarding payment of the $500,000.00 Transition Payment under the APA. The remaining allegations of this paragraph are denied.

40. The allegations of this paragraph state a legal conclusion to which no response is required. To the extent a response is required, the allegations of this paragraph are denied.

41. Tyson admits that ZFG wrote a letter dated May 23, 2008 regarding several of the disputed items of inventory, its demand for payment of $549,019.65, and its obligation to pay Tyson the Transition Payment. Tyson denies that the statements in ZFG's letter accurately set forth the parties' rights and obligations under the APA. Any remaining allegations of this paragraph are denied.

42. Tyson denies that it failed to respond to ZFG's May 23, 2008 correspondence. Tyson further denies that ZFG has any colorable claims in the instant action based on its rights under the APA or on any other ground.

### COUNT I

43. The foregoing paragraphs and responses are incorporated as though fully set forth herein.

44. The allegations in this paragraph state a legal conclusion to which no response is required.

45. The allegations of this paragraph are admitted.

46. Tyson admits that Section 5.6 of the APA relates to Tyson's entitlement to the Transition Payment, but denies that this paragraph accurately states all provisions of Section 5.6 of the APA. By way of further answer, Tyson refers to the APA, which speaks for itself.

47. The allegations of this paragraph are denied.

48. The allegations of this paragraph are denied.

49. The allegations of this paragraph are denied.

### COUNT II

50. The foregoing paragraphs and responses are incorporated as though fully set forth herein.

51. The allegations of this paragraph are admitted.

52. Tyson admits that Section 1.3 of the APA relates to the purchase by ZFG of the Assets and Inventory described in Schedule 1.3. These portions of the APA speak for themselves. The remaining allegations of this paragraph are denied.

53. The allegations of this paragraph state a legal conclusion to which no response is required. To the extent a response is required, the allegations of this paragraph are denied.

54. The allegations of this paragraph state a legal conclusion to which no response is required. To the extent a response is required, the allegations of this paragraph are denied.

### COUNT III

55. The foregoing paragraphs and responses are incorporated as though fully set forth herein.

56. The allegations of this paragraph are admitted.

57. The allegations of this paragraph state a legal conclusion to which no response is required.

58. The allegations of this paragraph state a legal conclusion to which no response is required. By way of further response, Tyson denies that it breached any alleged duty to deal in good faith with ZFG.

59. The allegations of this paragraph state a legal conclusion to which no response is required. By way of further response, Tyson denies that it breached any alleged duty not to impede or interfere with ZFG's ability to conduct and/or transact business with the Transition Businesses.

60. The allegations of this paragraph are denied as stated. By way of further response, Tyson refers to the APA, which speaks for itself.

61. Tyson denies that it impeded or interfered in any way with ZFG's ability to conduct business with the Transition Businesses. Tyson is without sufficient

knowledge or information to form a belief as to ZFG's mental state, but Tyson specifically denies that ZFG has any "reasonable expectations" regarding the transactions apart from the rights and obligations set forth in the APA. Any remaining allegations of this paragraph are denied.

62. Tyson admits that it has a long-standing relationship with Wal-Mart and conducts a variety of business transactions with Wal-Mart. The remaining allegations of this paragraph are denied.

63. The allegations of this paragraph state a legal conclusion to which no response is required. To the extent a response is required, the allegations of this paragraph are denied. By way of further answer, Tyson refers to its response to paragraph 62 of the Complaint.

64. The allegations of this paragraph state a legal conclusion to which no response is required. To the extent a response is required, the allegations of this paragraph are denied.

65. The allegations of this paragraph state a legal conclusion to which no response is required. To the extent a response is required, the allegations of this paragraph are denied.

And further answering, Tyson denies that ZFG is entitled to the relief it seeks in sub-sections (a) – (d) of its "Wherefore" clause, or to any other relief in this action.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim(s) upon which relief may be granted.

## SECOND DEFENSE

Some or all of ZFG's claims are barred by the applicable statute of limitations.

## THIRD DEFENSE

ZFG's claims are barred in whole or in part to the extent they attempt to impose duties or obligations upon Tyson that are not required under the APA.

## FOURTH DEFENSE

ZFG's claims are barred in whole or in part because there are no representations or warranties (express or implied) pertaining to the above-referenced transactions other than those expressly extended in the parties' contract.

## FIFTH DEFENSE

ZFG's claims are offset in whole or in part by amounts due to Tyson from ZFG under the APA.

## SIXTH DEFENSE

Some or all of ZFG's claims are barred for failure to mitigate its alleged damages.

## SEVENTH DEFENSE

ZFG's claims are barred in whole or in part by the doctrines of acquiescence, waiver, estoppel, and accord and satisfaction.

WHEREFORE, Tyson requests that the Complaint be dismissed with prejudice and that Tyson be awarded its costs and fees and such other relief as this Court deems just and proper.

## COUNTERCLAIM

For its counterclaim against Plaintiff, Tyson alleges as follows:


## PARTIES

1. On information and belief, Zwanenberg Food Group (USA) Inc. ("ZFG") is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

2. Tyson Refrigerated Processed Meats, Inc. ("Tyson") is a Delaware corporation with its principal place of business in Springdale, Arkansas.

## JURISDICTION AND VENUE

3. Under the terms of the parties' Asset Purchase Agreement ("APA"), any legal action or proceeding arising out of or relating to the parties' transaction may be instituted in a federal or state court located in the City of Wilmington, Delaware. The parties have contractually agreed to submit to the jurisdiction of such courts in connection with any claim arising out of the APA.

4. Under 28 U.S.C. § 1332, the United States District Court for the District of Delaware has subject matter jurisdiction over this counterclaim because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. The United States District Court for the District of Delaware has personal jurisdiction over ZFG by virtue of ZFG's filing the Complaint in this Court.

6. Venue is proper in the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1391(a)(1) and the forum selection provision in the APA.

## FACTS

7. After the parties executed the APA in November 2007, Tyson and ZFG communicated with each of the Transaction Businesses listed in Schedule 5.6 regarding

ZFG's purchase of the Assets.

8. Dollar General Corporation, Castleberry/Bumblebee Seafood, Ziyad Brother Importing, Food Lion, Inc., and Liberty Gold Fruit Company, Inc. raised no issues regarding the transfer of the Assets from Tyson to ZFG. ZFG has received orders from each of these Transition Businesses.

9. On May 20, 2008, H.E.B. placed an order for canned luncheon meat products through Tyson, and Tyson forwarded that order to ZFG.

10. In or about December 2007, Wal-Mart Stores Inc. ("Wal-Mart") received its first shipment of luncheon meat product manufactured by ZFG.

11. Upon information and belief, as part of Wal-Mart's routine process for accepting new vendors, Wal-Mart tested the canned luncheon meat products manufactured by ZFG. Wal-Mart's testing panels concluded that ZFG's product differed qualitatively from that manufactured by Tyson. Upon information and belief, Wal-Mart found that ZFG's product had large fat pieces visible in the product, a residual fat taste and feel, an excessive fatty mouth feel, and a more red appearance as compared to the Tyson-produced product.

12. Upon information and belief, as a result of this perceived modification of the product formulation, Wal-Mart decided to change suppliers of its private-label luncheon meat product. Wal-Mart expected, however, that ZFG would continue to provide product during its transition to a new supplier. Upon information and belief, Wal-Mart assigned ZFG a vendor number.

13. The supplier change transition period lasted for approximately three to four months. During this time, Tyson repeatedly told ZFG to contact Wal-Mart directly

to discuss order placing, invoicing, logistics, inventory, and other aspects of the business, since ZFG now owned and operated the Assets.

14. Upon information and belief, ZFG refused to contact Wal-Mart to discuss these issues and made no meaningful effort to approach Wal-Mart about salvaging its business relationship.

15. With ZFG's participation, Tyson took orders for luncheon meat products from Wal-Mart during the supplier change transition period and relayed those orders to ZFG. ZFG shipped those orders to Tyson for shipment through to Wal-Mart. Tyson forwarded to ZFG all moneys paid by Wal-Mart on account of these orders.

## COUNT I – BREACH OF CONTRACT

16. The APA is a valid and binding contract.

17. Under Section 1.2 of the APA, the Purchase Price for the Assets consists of a Closing Payment of $2,543,560.08 and a Transition Payment of $500,000.00. Tyson bargained to sell the Assets for the Purchase Price.

18. Tyson has fulfilled its obligation to provide Transition Services, or is relieved from providing same, under Section 5.6 of the APA.

19. ZFG has received orders for first shipments of inventory from each of the Transition Businesses.

20. As such, the Transition Payment from ZFG to Tyson is due and owing under Section 5.6(c) of the APA.

21. In the alternative, the Transition Payment from ZFG to Tyson is due and owing under Section 5.6(d) of the APA with respect to Wal-Mart, because any refusal by Wal-Mart to place orders with ZFG is a result of ZFG's failure to produce product to

the satisfaction of Wal-Mart's sensory testing panels, and because ZFG has refused to take appropriate steps to salvage the business relationship with Wal-Mart.

22. ZFG has not paid Tyson the Transition Payment.

23. Such refusal to pay constitutes a breach of the APA.

24. Tyson has been damaged by ZFG's breach in the amount of $500,000.00 plus accrued interest, costs, and attorney's fees.

WHEREFORE, Tyson prays for entry of judgment from this Court:

a. Awarding Tyson damages in the amount of $500,000.00 plus accrued interest, costs, and attorney's fees; and

b. Awarding Tyson such other and further relief as the Court deems just.

POTTER ANDERSON & CORROON LLP

By: /s/ W. Harding Drane, Jr.
W. Harding Drane, Jr. (#1023)
Jennifer C. Wasson (#4933)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
wdrane@potteranderson.com
jwasson@potteranderson.com

*Attorneys for Tyson Refrigerated Processed Meats, Inc.*

Dated: July 8, 2008
870580/32021-001v5

## CERTIFICATE OF SERVICE

W. Harding Drane, Jr., hereby certifies that, on the 8th day of July, 2008, he caused to be filed, with the United States District Court, District of Delaware, an electronic version of the within document, and to be served, via electronic email and by Hand Delivery upon the Delaware counsel of record identified below:

> Steven B. Brauerman, Esquire
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899-5130
> sbrauerman@bayrdfirm.com

/s/ W. Harding Drane, Jr.
W. Harding Drane, Jr. (No.1023)

873089/32021-001