## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ZWANENBERG FOOD GROUP (USA) INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 08-329-SLR |
| v. | ) | |
| | ) | |
| TYSON REFRIGERATED PROCESSED | ) | JURY TRIAL DEMANDED |
| MEATS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT TYSON REFRIGERATED PROCESSED MEATS, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

POTTER ANDERSON & CORROON LLP

W. Harding Drane, Jr. (#1023)
Jennifer C. Wasson (#4933)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
wdrane@potteranderson.com
jwasson@potteranderson.com

*Attorneys for Tyson Refrigerated Processed Meats, Inc.*

Dated: August 21, 2008

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ...............................................................1

SUMMARY OF ARGUMENT ................................................................................................2

STATEMENT OF FACTS .......................................................................................................2

ARGUMENT ............................................................................................................................4

    I.      Standard of Review....................................................................................................4

    II.    ZFG's Good Faith and Fair Dealing Claim Should Be Dismissed Because
          the Alleged Wrongdoing Occurred Prior to Contract Formation ............................5

    III.   ZFG's Good Faith and Fair Dealing Claim Should Be Dismissed Because
          Tyson Did Not Guarantee ZFG's Success with Wal-Mart.......................................6

CONCLUSION........................................................................................................................11

## TABLE OF AUTHORITIES

**CASES**                                                                   **PAGES**

*Allied Capital Corp. v. GC-Sun Holdings, L.P.*,
    910 A.2d 1020 (Del. Ch. 2006)..........................................................7, 10

*Anderson v. Wachovia Mtg. Corp.*,
    497 F. Supp. 2d 572 (D. Del. 2007).....................................................5, 7

*Benjamin v. Thomas Howell Group*,
    No. 1996-071, 2002 WL 31573004 (D. V.I. Apr. 22, 2002)
    *aff'd, Benjamin v. General Accident Ins. Co. of Pieurto Rico*,
    90 Fed. Appx. 434 (3d Cir. 2004)........................................................5-6

*Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys. Co.*,
    708 A.2d 989 (Del. 1998) ......................................................................7

*Dunlap v. State Farm Fire & Cas. Co.*,
    878 A.2d 434 (Del. 2005) ......................................................................7

*Homan v. Turoczy*,
    C.A. No. 19220, 2005 WL 2000756 (Del. Ch. Aug. 12, 2005).........................7, 10

*Husain v. Abdallah*,
    C.A. No. 08-070-SLR, 2008 WL 3048882 (D. Del. Aug. 1, 2008)..........................3

*Jablonski v. Pan Am. World Airways, Inc.*,
    863 F.2d 289 (3d Cir. 1988)..................................................................4

*Mele v. Federal Reserve Bank of New York*,
    359 F. 3d 251 (3d Cir. 2004)...............................................................2, 4

*Novinger Group, Inc. v. Hartford Ins., Inc.*,
    514 F. Supp. 2d 662 (M.D. Pa. 2007) ......................................................5-6

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)..................................................................4

*Rizzitiello v. McDonald's Corp.*,
    868 A.2d 825 (Del. 2005) ......................................................................7

*Student Finance Corp. v. Royal Indem. Co.*,
    C.A. No. 03-507-JJF, 2004 WL 609329 (D. Del. Mar. 23, 2004).........................5-6

*Turbe v. Gov't of the Virgin Islands,*
   938 F.2d 427 (3d Cir. 1991)........................................................................................4

*Williams v. First Corr. Med.,*
   C. A. No. 03-785-SLR, 2004 WL 2434307 (D. Del. Oct. 13, 2004).........................................4

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)...............................................................................................3, 4

Fed. R. Civ. P. 12(c) ..................................................................................................3, 4

## INTRODUCTION

In Count III of its complaint, Zwanenberg Food Group (USA), Inc. ("ZFG") alleges that Tyson Refrigerated Processed Meats, Inc. ("Tyson") breached the implied covenant of good faith and fair dealing by failing to take certain actions with respect to Wal-Mart Stores, Inc. ("Wal-Mart"), Tyson's largest customer of canned luncheon meats. All of the supposedly bad faith conduct underlying Count III of ZFG's pleading, however, is alleged to have occurred "prior to the closing" of Tyson's sale of its luncheon meat business to ZFG pursuant to the parties' Asset Purchase Agreement ("APA"). Because ZFG cannot recover under a contract-based theory for alleged wrongs occurring *prior* to the formation of the parties' agreement, ZFG's claim is deficient as a matter of law. Moreover, even if ZFG's allegations could be construed to encompass post-closing events, the parties' contract unequivocally defines the scope of Tyson's duties and ZFG's potential remedies with respect to the transition of customer relationships. ZFG cannot use the implied covenant of good faith and fair dealing as an end-run around the agreement it negotiated and accepted. Therefore, the Court should enter judgment on the pleadings dismissing Count III of the Complaint.[1]

## NATURE AND STAGE OF THE PROCEEDINGS

ZFG filed its complaint against Tyson on May 30, 2008. (D.I. 1) On July 8, 2008, Tyson filed its answer (D.I. 8) denying the material allegations of ZFG's complaint and counterclaimed for breach of contract against ZFG. Tyson now moves for judgment on the pleadings with respect to Count III of the complaint, which alleges that Tyson breached the implied covenant of good faith and fair dealing. This is Tyson's Opening Brief in Support of its Motion for Partial Judgment on the Pleadings.

---

[1] Tyson files this motion at this early stage of the proceedings in an effort to streamline the case for purposes of discovery and possible settlement.

## SUMMARY OF ARGUMENT

1.      The Court should dismiss ZFG's claim for breach of the implied covenant of good faith and fair dealing because all of the facts that ZFG alleges in support of this claim occurred prior to execution of the parties' contract. Because the covenant of good faith and fair dealing arises out of the parties' contractual relationship, ZFG cannot state a claim for breach based on pre-contract actions.

2.      Even if ZFG had alleged facts occurring subsequent to contract formation, the Court should dismiss its claim for breach of the implied covenant of good faith and fair dealing because the obligations that ZFG seeks to impose on Tyson are not contemplated by and are contrary to the terms of the parties' bargained-for agreement.

## STATEMENT OF FACTS

The factual allegations related to Count III, which are taken as true for purposes of this motion, are as follows: ZFG manufactures canned meats and other food products. Compl. ¶ 2. Tyson also manufactures processed meats. *Id.* at Caption; ¶ 3. In mid-2007, ZFG expressed interest in purchasing from Tyson the inventory and equipment that Tyson used to produce, manufacture, and sell its canned luncheon meat products. *Id.* ¶ 7. On November 8, 2007, the parties executed the APA, which governs their transaction. *Id.* ¶ 9. Under the terms of the APA, Tyson was required to provide certain delineated Transition Services if ZFG requested them within thirty days after the closing. APA § 5.6.[2] These Transition Services are described in the contract as follows:

---

[2] Because the APA is incorporated by reference in ZFG's Complaint and attached thereto as Exhibit A, the Court may consider this document in ruling on Tyson's motion for partial judgment on the pleadings. *Mele v. Federal Reserve Bank of New York*, 359 F.3d 251, 256 n.5 (3d Cir. 2004) (In deciding a Rule 12(c) motion, the court may rely on "a document integral to or explicitly relied upon in the complaint") (citations and internal quotation marks omitted); *cf.*

2

(b)    "Transition Services" shall include, *and be limited to*, the following:

(i)    Seller shall assist with Purchaser's first production run of the recipes transferred as part of the Assets;

(ii)    Seller, working in conjunction with the Purchaser's representatives, will contact each such Transition Business and [sic] to facilitate the establishment of Purchaser's relationship with such Transition Business.

APA § 5.6(b) (emphasis supplied). The Transition Businesses comprised Tyson's seven largest customers of canned luncheon meats, including Wal-Mart, which accounted for 65.47% of Tyson's total revenue from this business. APA Schedule 2.16; Compl. ¶ 16. Other than the obligations set forth in Section 5.6, there are no other post-closing duties Tyson must fulfill with regard to the Transition Businesses, and the APA does not contemplate Tyson's provision of any pre-closing Transition Services. *See* APA § 5.6(c). As the language of APA § 5.6 makes clear, Transition Services are "limited to" the services expressly described therein, thus leaving no room for implication of any other duties.

Shortly after the parties executed the APA, ZFG requested Transition Services under Section 5.6. *Id.* ¶ 22. As part of those Transition Services, Tyson arranged a meeting between representatives of Wal-Mart, Tyson, and ZFG in late November 2007. *Id.* ¶ 23. On February 26, 2008, Wal-Mart notified Tyson that it did not plan to use ZFG to fill its orders of canned luncheon meat. *Id.* ¶ 31.

ZFG now blames Wal-Mart's refusal to do business with it on a lack of prior notice to Wal-Mart before Tyson and ZFG entered into the APA. *Id.* ¶¶ 62-64. ZFG claims it "insisted" that Tyson advise Wal-Mart about the parties' transaction before the deal was signed, but Tyson refused to allow ZFG to contact the Transition Businesses prior to closing for confidentiality

---

*Husain v. Abdallah*, C.A. No. 08-070-SLR, 2008 WL 3048882, at *2 n.4 (D. Del. Aug. 1, 2008) (When ruling on a motion to dismiss under Rule 12(b)(6), the court will consider exhibits attached to the complaint).

reasons. *Id.* ¶¶ 19-20; 62.   ZFG also contends that Tyson "must have known" that Wal-Mart would have required notice of the parties' transaction prior to the execution of the APA. *Id.* ¶ 62.   ZFG posits that Tyson's failure to give Wal-Mart sufficient prior notice and Tyson's refusal to let ZFG contact Wal-Mart prior to the closing constitute a breach of the implied covenant of good faith and fair dealing. *Id.* ¶¶ 62-64. ZFG seeks more than a million dollars in relief as a result of this alleged breach. *Id.* ¶ 65.

## ARGUMENT

### I.    STANDARD OF REVIEW

In considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), courts employ the standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Mele*, 359 F.3d at 253.   The allegations in the complaint are accepted as true, and all reasonable factual inferences are drawn in favor of the non-moving party. *Williams v. First Corr. Med.*, C. A. No. 03-785-SLR, 2004 WL 2434307, at *1 (D. Del. Oct. 13, 2004) (*quoting Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991)).   The court should grant a motion for judgment on the pleadings if no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law. *Id.* (*citing Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988)).   The court need not, however, adopt conclusory allegations or statements of law, and the plaintiff must do more than make a blanket assertion of entitlement to relief.   *Phillips v. County of Allegheny*, 515 F.3d 224, 233-234 (3d Cir. 2008).

**II.    ZFG's Good Faith and Fair Dealing Claim Should Be Dismissed Because the Alleged Wrongdoing Occurred Prior to Contract Formation.**

The implied covenant of good faith and fair dealing is contractual in nature. *Anderson v. Wachovia Mtg. Corp.*, 497 F. Supp. 2d 572, 581-82 (D. Del. 2007) (applying Delaware law).[3] This covenant is not imposed on parties until they have reached an agreement, and it does not bind them during their negotiation process. *Student Finance Corp. v. Royal Indem. Co.*, C.A. No. 03-507-JJF, 2004 WL 609329, at *6 (D. Del. Mar. 23, 2004) (dismissing good faith and fair dealing claim under Delaware law). The duty is limited only to those instances where a contract exists. *Id.; Benjamin v. Thomas Howell Group*, No. 1996-071, 2002 WL 31573004, at *2 (D. V.I. Apr. 22, 2002), *aff'd, Benjamin v. General Accident Ins. Co. of Puerto Rico*, 90 Fed. Appx. 434 (3d Cir. 2004). As such, the covenant of good faith and fair dealing does not extend to actions occurring prior to contract formation. *Royal*, 2004 WL 609329, at *6; *Novinger Group, Inc. v. Hartford Ins., Inc.*, 514 F. Supp. 2d 662, 672 (M.D. Pa. 2007).

Count III of the complaint sets forth ZFG's allegations regarding Tyson's purported breach of the covenant of good faith and fair dealing. Compl. ¶¶ 55-65. ZFG alleges that the APA is an enforceable contract, and that it imposes an implied duty upon Tyson to deal with ZFG in good faith. Compl. ¶¶ 57-58. The alleged facts that form the basis for Tyson's breach of this duty, however, do not implicate any of its contractual obligations under the APA. Instead, ZFG asserts that Tyson acted in bad faith by "refus[ing] to let ZFG make direct contact with Wal-Mart *prior to the closing of the APA*." Compl. ¶ 63 (emphasis added). ZFG also alleges that Tyson "failed to give Wal-Mart sufficient prior notice of the transaction with ZFG" and "must have known that Wal-Mart would have required that Tyson advise them that ZFG was

---

[3] Delaware law applies to ZFG's breach of good faith and fair dealing claim, as it arises out of the APA. *See* APA § 8.7 (establishing that the parties' contract "shall be governed by and construed in accordance with the laws of the State of Delaware").

going to be taking over its orders *prior to the closing of the APA*." Compl. ¶¶ 62-63 (emphasis added).

Thus, Count III of ZFG's pleading pertains only to actions that occurred, or that ZFG alleges should have occurred, before the contract at issue was executed. ZFG does not allege in Count III that Tyson committed any wrongful act, or failed to act, *after* the APA was signed. This deficiency is fatal to ZFG's breach of good faith and fair dealing claim. *See Novinger*, 514 F. Supp. 2d at 671-72 (granting motion to dismiss plaintiff's breach of good faith and fair dealing claim because allegations related to defendant's actions prior to contract formation); *Royal*, 2004 WL 609329, at \*5-6 (rejecting plaintiff's argument that good faith and fair dealing claim under Delaware law could arise before the execution of a written contract and granting motion to dismiss); *Benjamin*, 2002 WL 31573004, at \*2 (granting summary judgment on good faith and fair dealing claim; defendant owed no duty of good faith and fair dealing to plaintiffs because no contract existed between the parties).

If ZFG was concerned about Tyson's pre-closing stance on contact with the Transition Businesses, it could have bargained for additional contractual protections or simply declined to enter into the proposed deal. It did neither, and it should not now be permitted to recover for events that occurred, with ZFG's full knowledge, before ZFG willingly entered into the APA. Because ZFG cannot use the implied covenant of good faith and fair dealing to impose pre-contractual obligations on Tyson, its claim fails as a matter of law.

### III.   ZFG's Good Faith and Fair Dealing Claim Should Be Dismissed Because Tyson Did Not Guarantee ZFG's Success with Wal-Mart.

Even if ZFG based its claim for breach of the implied covenant of good faith and fair dealing upon an act or failure to act by Tyson after execution of the APA, which ZFG has not done, such a claim would still be legally deficient. Imposing implied obligations on a party

6

based on the covenant of good faith and fair dealing is proper only in "rare instances" and "should be invoked only sparingly, and with strong justification." *Homan v. Turoczy*, C.A. No. 19220, 2005 WL 2000756, at *18-19 (Del. Ch. Aug. 12, 2005) (citations omitted). *See also Rizzitiello v. McDonald's Corp.*, 868 A.2d 825, 831 (Del. 2005) (noting that "[t]he implied covenant is to be narrowly construed"); *Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys. Co.*, 708 A.2d 989, 992 (Del. 1998) (explaining that "implying obligations based on the covenant of good faith and fair dealing is a cautious enterprise" and citing cases in support of that proposition).

To state a claim for breach of the implied covenant of good faith and fair dealing, the plaintiff must plead: (1) a specific implied contractual obligation; (2) breach of that obligation by the defendant; and (3) resulting damage to the plaintiff. *Anderson*, 497 F. Supp. 2d at 581-82 (citations omitted). Significantly, while the covenant can be used in very limited circumstances to imply terms in the agreement, the express terms of the contract control, and the covenant cannot be used to circumvent the parties' bargain. *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005); *see also Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1032-1033 (Del. Ch. 2006) ("[I]mplied covenant analysis will only be applied when the contract is truly silent with respect to the matter at hand, and only when the court finds that the expectations of the parties were so fundamental that it is clear that they did not feel a need to negotiate about them.").

In this case, ZFG cannot state a claim for breach of the covenant of good faith and fair dealing because it cannot show that Tyson was impliedly obligated under the APA to take any actions with regard to Wal-Mart prior to the closing, or to ensure the success of ZFG's business

relationship with Wal-Mart after the closing.   In fact, these alleged duties run completely contrary to the actual terms of the parties' bargained-for agreement.

The APA sets forth in detail the parties' respective rights and duties regarding the transaction, many of which are enumerated in Articles II and III, the comprehensive sections on representations and warranties of the Seller and Purchaser. *See* APA Articles II, III.   In Article II, Tyson specifically warranted that it had good commercial relationships with each of the Transition Businesses. *See* APA § 2.16.   Tyson did not warrant, however, that ZFG would have a similar relationship with the Transition Businesses or that such businesses would accept ZFG as a vendor.   Instead, in Section 5.6, titled "Post-Closing Transition," the contract directly addresses the transfer of the Transition Business relationships from Tyson to ZFG. *See* APA § 5.6.   As part of the transfer process, Section 5.6 allows ZFG to request specified Transition Services from Tyson in writing within thirty days after the closing. *See* APA § 5.6(a), (b). These Services are expressly limited to Tyson's assistance with the first production run of the transferred recipes and Tyson's contacting the Transition Businesses after the closing in conjunction with ZFG "to facilitate the establishment of [ZFG's] relationship with such Transition Business." APA § 5.6(b)(ii).   The APA requires Tyson to perform these Transition Services only if requested and only following the closing.   APA § 5.6(a).   The APA also emphasizes that the Transition Services are "limited to" the acts set forth in Section 5.6(b).   APA § 5.6(b).   It imposes no obligations on Tyson regarding the Transition Businesses prior to the closing, and subsequent to the closing, it obligates Tyson only to contact each Transition Business in conjunction with ZFG to "facilitate" ZFG's relationships with them.   APA § 5.6(b)(ii).   The contract contains no promise that ZFG's relationships with the Transaction Businesses in fact will be established or successful.

8

Section 5.6 of the APA also addresses the Transition Businesses' placement of orders with ZFG after the closing. This provision conditions Tyson's right to a $500,000.00 Transition Payment on the completion of the Transition Services and ZFG's receipt of First Orders from the Transition Businesses.[4]   Under the provisions of Section 5.6(c) and (d), ZFG is not required to pay Tyson the Transition Payment if ZFG can show that it failed to obtain First Orders through no fault of its own.[5] APA § 5.6(c), (d). In Count I of its complaint, ZFG invokes these contract provisions to justify its failure to pay Tyson the Transition Payment, since it allegedly has not obtained First Orders from certain Transition Businesses. *See* Compl. ¶¶ 43-49.   In addition to relying on this bargained-for provision to avoid paying Tyson, however, ZFG seeks to use the covenant of good faith and fair dealing to affirmatively recover significant sums from Tyson based on an implied contract provision for which it did not bargain:  a guarantee that Wal-Mart would do business with ZFG once ZFG assumed Tyson's assets. Compl. ¶ 64.

ZFG, a sophisticated entity with experience in the canned meat industry (*id.* ¶ 2), could have sought additional contractual protections to allay any concerns about its future relationships with Wal-Mart and/or the other Transition Businesses. For example, it could have insisted on the right to terminate the agreement should Wal-Mart fail to accept it as a vendor, or negotiated for additional warranties, representations or duties with regard to Wal-Mart specifically or the Transition Businesses generally. Or, if unable to negotiate those terms, ZFG could have walked away from the deal, and refused to sign the APA. ZFG did none of these things. Instead,

---

[4] "First Orders" are defined in the APA as ZFG's receipt of orders for the first shipments of Inventory to the Transition Businesses. *See* APA § 5.6(c).
[5] In Section 5.6(d), the APA provides that Tyson is entitled to the Transition Payment if ZFG's failure to obtain First Orders resulted from "any act, omission, or fault of the Purchaser." APA § 5.6(d). ZFG's degree of fault in failing to obtain First Orders from Wal-Mart is the subject of Count I of ZFG's complaint and Tyson's Counterclaim. This issue need not be considered to decide the instant motion.

knowing full well that Tyson was unwilling to give Wal-Mart notice of the transaction until after ZFG signed the APA, ZFG voluntarily agreed to handle the transition of the canned luncheon meats business and ZFG's relationships with the Transition Businesses through the provisions of APA Sections 5.6(c) and (d).

To allow ZFG now to claim that Tyson breached an implied covenant, and to grant it a right of recovery (allegedly worth more than a million dollars) that it did not obtain at the bargaining table, would essentially rewrite the parties' agreement and eviscerate the negotiation process. The Court should not imply an alleged obligation under the covenant of good faith and fair dealing where the contract addresses the subject of the alleged wrong but does not include the obligation alleged, as is the case here. *Homan*, 2005 WL 2000756, at \*18. The covenant of good faith and fair dealing "is not a fall-back position to be argued when you now wish [you] had done a better job of negotiating the contract in the first place," *Allied*, 910 A.2d at 1035, which is exactly what ZFG attempts to do in Count III of its complaint.

Because ZFG seeks to obtain here what it failed to obtain in arms-length negotiations between sophisticated parties, ZFG's good faith and fair dealing claim is meritless and should be dismissed. *See id.* (granting motion to dismiss breach of covenant of good faith and fair dealing claim based on non-moving party's failure to negotiate for protection it desired; "courts should be most chary about implying a contractual protection when the contract could easily have been drafted to expressly provide for it"); *Homan*, 2005 WL 2000756, at \*19 (granting judgment in favor of defendants on breach of covenant of good faith and fair dealing claim, because to rule otherwise would allow plaintiffs to impose an obligation on defendants that they could have included in the contract but did not).

## **CONCLUSION**

For the foregoing reasons, the Court should grant Tyson's motion for judgment on the pleadings with respect to Count III of ZFG's Complaint.

POTTER ANDERSON & CORROON LLP

By: /s/ W. Harding Drane, Jr.
     W. Harding Drane, Jr. (#1023)
     Jennifer C. Wasson (#4933)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     P.O. Box 951
     Wilmington, DE 19899-0951
     (302) 984-6000
     wdrane@potteranderson.com
     jwasson@potteranderson.com

     *Attorneys for Tyson Refrigerated Processed Meats, Inc.*

Dated:  August 21, 2008
877777 / 32021-001

## CERTIFICATE OF SERVICE

W. Harding Drane, Jr., hereby certifies that, on the 21st day of August, 2008, he caused to be filed, with the United States District Court, District of Delaware, an electronic version of the within document, and to be served, via electronic email and by Hand Delivery upon the Delaware counsel of record identified below:

Steven B. Brauerman, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
sbrauerman@bayrdfirm.com

/s/ W. Harding Drane, Jr.
W. Harding Drane, Jr. (No.1023)

873089/32021-001